The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAMA JAMMEH,<br><br>Plaintiff,<br><br>v.<br><br>GESAGRAN KUMAR, *et al.*,<br><br>Defendants. | NO. 2:22-cv-331-BJR<br><br>**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT** |

## I. INTRODUCTION

Plaintiff, Adama Jammeh, moves for default judgment against Defendants Gesagran Kumar, Santoshni Kumar, and GSK Groups LLC (collectively "Defendants" or "Kumar"). ECF No. 45. Defendants have neither appeared in this case, nor have they responded to Plaintiff's Complaint. On May 13, 2026, the Clerk's Entry of Default was entered. ECF No. 44. Having reviewed the motion, the declarations filed in support thereof, the record of the case, and the relevant legal authorities, the Court grants the motion in part. The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. Factual Background

Jammeh is a low-income tenant who resided with her children at 603 S. 310th Ct., Federal Way, Washington 98003 ("the Property") between October 2018 and November 2020. Compl. ¶ 7, ECF No. 1. At the time, Defendants owned the Property.[1] *Id.* ¶ 8. Jammeh received housing assistance through the United States Department of Housing and Urban Development's ("HUD") Section 8 Housing Choice Voucher Program ("Voucher Program") administered by the King County Housing Authority ("KCHA"). Jammeh and Defendants signed a Residential Lease Agreement in September 2018 that listed the rental price as $2,600. *Id.* ¶¶ 35–36. But after Jammeh initiated the Voucher Program process, KCHA informed Defendants that Jammeh was only eligible for a maximum rental price of $2,211. *Id.* ¶ 40. Defendants agreed to the lower price, replacing the second page of the Residential Lease Agreement to reflect the $2,211 total rental price. *Id.* ¶¶ 41–42. Then, KCHA and Defendants entered into a separate Housing Assistance Payment ("HAP") contract that set Jammeh's portion of the rent as $369 per month, with KCHA paying the balance. *Id.* ¶ 43. The HAP contract included a Tenancy Addendum barring landlords from charging the tenant rent in excess of the rental price set by the contract. *Id.* ¶¶ 26–27.

However, Defendants went on to charge Jammeh a higher rent price of $758, which corresponded with the original $2,600 total rental price. *Id.* ¶ 48. Jammeh paid that price through January 2020. *Id.* ¶¶ 48, 52, 58–59. Between February 2020 and June 2020, Defendants charged—and Jammeh paid— $958 in rent. *Id.* ¶¶ 53, 55. The HAP contract was first recertified in December

[1] Defendants Gesagran Kumar and Santoshni Kumar co-owned the Property until they sold it in December 2020. Compl. ¶ 8. They are sole members of the Washington limited liability company, Defendant GSK Groups, LLC.

2019, raising Jammeh's portion of the rent from $369 to $497. *Id.* ¶ 51; *see also* Ex. 4, ECF No. 46-1 at 39–40. The HAP contract was recertified a second time in October 2020, raising her portion of the rent to $591. Compl. ¶ 57; *see also* Ex. 9, ECF No. 46-1 at 64–66. Jammeh claims that Defendants overcharged her $8,534 over the course of 22 rental payments between October 2018 and June 2020, as well as in August 2020.[2] Compl. ¶¶ 62–63.

Before moving in, Jammeh had paid Defendants a $3,900 security deposit. *Id.* ¶ 45. However, a month after she moved out, Defendants only returned $582.37 of her security deposit. *Id.* ¶ 65.

### B. Procedural Background

On March 17, 2022, Jammeh brought this action under seal, asserting five claims: a *qui tam* claim pursuant to the False Claims Act, 31 U.S.C. § 3729*, et seq.* ("FCA") (Count I)[3]; violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*. ("CPA") (Count II); violation of Washington's Residential Landlord-Tenant Act, RCW 59.18 *et seq*. ("RLTA") (Count III); breach of contract (Count IV); and unjust enrichment (Count V). Jammeh successfully served the United States Government, ECF No.6, which investigated her *qui tam* claim. ECF Nos. 9, 11, 13–14, 17, 19. The Government and the parties engaged in settlement negotiations. ECF Nos. 17, 19. Defendants were represented by counsel for the purpose of these negotiations. ECF No. 17 at 4. In April 2024, the Government and the parties reached a settlement agreement resolving only Count

---

[2] Jammeh does not allege that she was overcharged rent for the months of July, September, and October in 2020.

[3] When discussing Count I, the Court will refer to Jammeh as the Relator. In *qui tam* actions under the FCA, a relator is the private citizen who files a lawsuit on behalf of the United States against an individual who defrauds the Government. 31 U.S.C. § 3730(b).

I.[4] ECF No. 21, Government's Notice of Intervention In-Part. Shortly thereafter, the Government intervened in this case only for the purpose of settlement and moved to unseal the entire case. *Id.* In July 2024, this Court granted the parties' stipulated dismissal of Count I. Order Granting Parties' Joint Stipulated Mot. of Partial Dismissal, ECF No. 29. Since then, Defendants have not entered an appearance in this case to defend against Jammeh's remaining claims.

## III. LEGAL STANDARD

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. First, a plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Once default has been entered, the plaintiff may move for default judgment.

It is in the court's discretion to grant or deny a motion for default judgment; however, default is disfavored. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). "Cases should be decided upon their merits whenever reasonably possible." *Id.* (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). If a court determines that default judgment is appropriate, it then determines the relief that should be given. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In deciding motions for default judgment, courts take "the well-pleaded factual allegations in the complaint as true, except those relating to the amount of damages." *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017) (citations omitted); Fed. R. Civ. P. 8(b)(6). "The plaintiff must prove the amount of damages to which it is entitled." *Triple B Corp. v. Wholesome Choice Mkt.,*

---

[4] While the parties' settlement agreement is not part of the record, the Court credits the Government's representation in its filings that the agreement resolved only Count I, and not Jammeh's remaining claims, and that Defendants were well aware of that at the time. *See* ECF No. 19 at 4; ECF No. 28 at 2.

*Inc.*, 2020 WL 4261438, at *1 (W.D. Wash. July 24, 2020). "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). Courts also do not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 4669).

## IV. DISCUSSION

### A. The Court has jurisdiction.

The Court has supplemental jurisdiction over Jammeh's remaining state-law claims and her request for attorneys' fees. A district court has "discretionary authority to retain jurisdiction over state-law claims where it has dismissed on the merits federal claims over which it did have original jurisdiction." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). This Court had original, federal question jurisdiction over this subject matter under 28 U.S.C. § 1331 because Jammeh alleged that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. While the Court dismissed the FCA claim (Count I) that supplied federal question jurisdiction, *see* Order Granting Parties' Joint Stipulated Mot. of Partial Dismissal, the Court exercises its discretion to maintain supplemental jurisdiction over the state law claims that are "so related to" the FCA claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Further, the settlement agreement resolving the FCA claim did not include Jammeh's attorneys' fees, which she now seeks. Government's Notice

of Intervention In-Part at 2; Mot. at 2; *see also* 31 U.S.C. § 3730 (d)(1). Exercising supplemental jurisdiction over the remaining claims is in the interest of judicial economy because doing so prevents further delays in a four-and-a-half-year case. And Defendants never filed a pleading that demonstrates the Court's exercise of jurisdiction is unreasonable.

Accordingly, the Court retains jurisdiction over the subject matter and the parties.

**B. Jammeh is entitled to partial default judgment.**

Jammeh argues that the *Eitel* factors support granting default judgment. Mot. at 5–9. When deciding motions for default judgment, courts weigh the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72; *also see NewGen*, 840 F.3d at 616–17 (discussing how district courts "weigh" the *Eitel* factors). The Court shall address these factors in turn.

**1. Possibility of prejudice to the plaintiff**

The first *Eitel* factor considers the possibility of prejudice to the plaintiff. Jammeh filed this lawsuit in March 2022, and post-settlement, her remaining claims have been pending since July 2024. *See* Order Granting Parties' Joint Stipulated Mot. of Partial Dismissal. Defendants have failed to appear or otherwise put forward a defense in over two years, despite their awareness that Plaintiff brought additional claims that the settlement agreement with the Government neither resolved nor released. Mot. at 5. Jammeh would be prejudiced without entry of default judgment because she would be left without legal remedy given Defendants' lack of response. Therefore, the first *Eitel* factor supports default judgment.

**2. Substantive merits and sufficiency of complaint**

The second and third *Eitel* factors, concerning the merits of Jammeh's claim and the sufficiency of her complaint, are "often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)).

First, the Court assesses whether the settlement agreement bars any of Jammeh's remaining claims.[5] Generally, in the context of FCA claims, "[w]hen the government has intervened, that portion of the relator's complaint effectively ceases to exist because it has been superseded." *United States v. Pub. Warehousing Co. K.S.C.*, 242 F. Supp. 3d 1351, 1357 (N.D. Ga. 2017). Here, Count III, which focuses on Defendants' retention of most of Jammeh's security deposit, is completely independent and not superseded by the settlement agreement. On the other hand, Counts II, IV, and V involve the same fraudulent conduct alleged in the FCA claim.

In *United States ex. rel Barajas v. Northrop Corp.,* the Ninth Circuit held that a *qui tam* plaintiff-relator cannot bring other claims on behalf of the Government after the Government has settled an FCA claim, especially if those claims could have been asserted in the original complaint. 147 F.3d 905, 909–10 (9th Cir. 1998). However, here, Jammeh brings claims on her own behalf to recover damages for overcharged rent that she paid herself. Unlike the relator in *Barajas*, she

[5] Where, as here, the Government intervenes to settle an FCA claim, a *qui tam* relator like Jammeh "shall…receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim[.]" 31 U.S.C. § 3730(d)(1). The Court cannot determine from the record whether Jammeh has received a share of the settlement amount. In April 2024, the Government represented that the parties would file a Joint Stipulation of Partial Dismissal after Defendants make their first scheduled payment of the settlement amount, *see* Government's Notice of Intervention In-Part at 2, which the parties ultimately filed in July 2024, ECF No. 28. The Government also wrote that it reserves the right to file a complaint in intervention in the event that Defendants don't pay the full settlement amount. *See* Government's Notice of Intervention In-Part at 2. It has not done so. So the Court presumes that Defendants have been making payments in compliance with the settlement agreement.

brought those claims contemporaneously with the FCA claim, *see* Compl., and her remaining claims do not seek to address injury to the Government; she has sufficiently pleaded her own separate injury. *Cf. id.* at 910 ("Once the government recovers the money it paid on a false invoice, plus penalties, or releases its claim, there is no more to be recovered by anyone, because only the government can have a claim for a false claim made upon the government."). Even presuming that Jammeh received her share of the settlement amount, she is entitled to pursue related claims arising under common law and state laws. *See, e.g.*, *U.S. ex rel. Hinden v. UNC/Lear Servs., Inc.*, 362 F. Supp. 2d 1203, 1207 (D. Haw. 2005) (dismissing on separate timeliness grounds relator's separate cause of action that was expressly reserved in settling an FCA claim); *see also Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204 (9th Cir. 2009), *as amended on denial of reh'g and reh'g en banc* (Jan. 6, 2010) (holding that settlement of an FCA claim does not bar independent claims against third parties). "The statute and case law thus contemplate that the government can pursue some or all of the relator's claims, and the relator can pursue claims when the government does not." *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1075 (N.D. Cal. 2020) (collecting cases); *see also Kelly v. Denault*, 374 F. Supp. 3d 884 (N.D. Cal. 2018); *Cummings v. Hale*, No. 15-cv-4723-JCS, 2017 WL 3669622 (N.D. Cal. May 17, 2017), *report and recommendation adopted sub nom. United States ex rel. Cummings v. Hale*, No. 15-cv-4723-VC, 2017 WL 3669553 (N.D. Cal. Aug. 16, 2017). The Court finds that because Jammeh brought the remaining claims in her original complaint and on her own behalf against Defendants—rather than on behalf of the Government—they may proceed post-settlement.

Now, the Court considers each of Jammeh's four remaining claims to determine if Jammeh has pleaded sufficient factual matter, accepted as true, to state plausible claims.

**a. Count II – Washington's Consumer Protection Act**

To prevail on a CPA claim, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 37 (2009). In order to establish "an unfair or deceptive act or practice," the plaintiff "need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Id.* at 47. "[T]here must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *McClellon v. Citigroup Glob. Markets, Inc.*, No. 18-cv-978, 2018 WL 5808440, at *4 (W.D. Wash. Nov. 6, 2018) (citation omitted).

A dispute between private parties "has a public interest impact where there is a 'likelihood that additional plaintiffs have been or will be injured in exactly the same fashion.' " *Beacon Plumbing & Mech. Inc. v. Sposari Inc.*, No. 15-cv-1613, 2016 WL 5795282, at *4 (W.D. Wash. Mar. 17, 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 790 (1986)). The Court finds that Jammeh has adequately pled the "public interest" element of a CPA claim. *See* Compl. ¶¶ 85, 89 (citing *Riggins v. Rous. Auth. of Seattle,* 87 Wn. 2d 97, 98 n.1, (1976) (describing public housing as "a matter of continuing and substantial public interest")). Given that Defendants are landlords in Washington, there is a likelihood that a similar injury—overcharging tenants rent—would be repeated. Accordingly, the practice Jammeh complains of satisfied the public interest impact element of a CPA claim. Her CPA allegations, while threadbare, suffice to state a claim that Defendants' overcharging her was an unfair or deceptive act or practice that caused her to pay more in rent than the amount she agreed to pay as a Section 8 tenant participating in the Voucher Program.

**b. Count III – Washington's Residential Landlord-Tenant Act**

In relevant part, the Residential Landlord-Tenant Act ("RLTA") requires landlords to provide tenants, in advance of collecting a security deposit, a written checklist or statement specifically describing the condition and cleanliness of or existing damage to the premises and furnishings that are provided to the tenant. RCW 59.18.260. Failing to provide such a checklist or statement is a violation of the RLTA. *See Chabuk v. Miller*, 18 Wn. App. 2d 1016 (2021); *see also Silver v. Rudeen Mgmt. Co., Inc.*, 197 Wn. 2d 535 (2021). And "[u]nless the landlord can show circumstances outside their control, should they fail to provide a tenant with the required documentation within the statutory period, they are liable for the full amount of the deposit." *Heston v. Christensen*, 30 Wn. App. 2d 511, 522 (2024). Further, at the time that Jammeh moved out, the RLTA required landlords to return security deposits within 21 days of a property being vacated.[6]

Here, the lease delineates a list of actions that would justify deductions from a tenant's security deposit, but it does not describe the specific condition of the Property at issue. *See* Ex. 1 at 15, ECF No. 46-1. Jammeh alleges that Defendants returned only $582.37 of her $3,900 security deposit on December 3, 2020, a month after she vacated the Property on November 4, which is later than the 21-day period required by the statute at the time. Compl. ¶¶ 64–65, 96. She further alleges that Defendants justified this deduction of $3,317.63 in a letter that only "gave general descriptions of alleged damage to the Property and other charges deducted from the security deposit." *Id.* ¶ 65. Jammeh asserts that "[t]he only damage to the unit was the result of wear from the ordinary use of the premises." Mot. at 3 (citing Jammeh Decl. ¶ 20). And Defendants, through default, have not shown circumstances beyond their control that prevented them from complying with the RLTA's

[6] Since then, that time frame has been expanded to 30 days. *See* RCW 59.18.280(1)(a).

security deposit provisions. Accepting Jammeh's allegations and sworn testimony as true, the Court finds that Jammeh sufficiently alleged that Defendants violated the RLTA.

**c. Count IV – Breach of Contract**

To prevail on a breach of contract claim, a plaintiff must show (1) a valid contract existed between the parties, (2) the contract was breached, and (3) damages resulted. *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

Here, Jammeh alleges that Defendants overcharging her rent breached the Tenancy Addendum. Mot. at 7; *see also* Compl. ¶¶ 99–103. While the Tenancy Addendum is part of the Housing Assistance Payment ("HAP") contract between Defendants and KCHA, it explicitly states that "[t]he tenant or [KCHA] may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum." Ex. 1 at 6. Jammeh alleged that Defendants charged her—and she paid—a total of $8,534 in excess of her portion of the rent under the HAP contract. Compl. ¶¶ 62–63. Jammeh supported her allegations and damages calculation with a sworn declaration and evidence of the payments and the controlling HAP contracts. *See* Jammeh Decl., ECF No. 49; *see also* Ex. 11, Proof of Rent Payments and Charges, ECF No. 46-1 at 75–89; Ex. 1 at 2; Ex. 4; Ex. 9. As such, Jammeh sufficiently alleged a breach of contract claim.

**d. Count V – Unjust Enrichment**

Finally, Jammeh does not adequately state an unjust enrichment claim. To state a claim for unjust enrichment, a plaintiff must allege three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Young v. Young*, 164 Wn. 2d 477, 484–85 (2008).

The general rule is that an unjust enrichment claim may not proceed when an enforceable contract exists. *Orser v. Select Portfolio Servicing, Inc.*, 05-cv-1507-RSL, 2005 WL 3478126, at *3–4 (W.D. Wash. Dec. 20, 2005). But if the contract does not cover the subject matter at issue, or there is evidence of bad faith, an implied contract may arise. *Id.*; *see also Beyer v. Countrywide Home Loans Servicing LP*, No. 07-cv-1512-MJP, 2008 WL 1791506, at *11 (W.D. Wash. Apr. 18, 2008); *Gerber v. First Horizon Home Loans Corp.*, 05-cv-1554-RSL, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006).

Here, the parties had an enforceable contract, as they had entered into a residential lease agreement and Jammeh even pleaded a breach of contract claim against Defendants (Count IV). Compl. ¶¶ 35, 99–103; Ex. 1. While Jammeh pleaded that Defendants collected overcharged rent from her and unjustly profited at her expense, *see* Compl. ¶¶ 47–63, 99–108, the contract between them expressly covers the subject matter at issue. The Section Tenancy Addendum, discussed above, provides that Defendants "may not charge or accept from [Plaintiff] any payment for rent of the unit in addition to the rent to owner." *Id.* ¶ 27; *see also* Ex. 1 at 9. The contract explicitly required Jammeh to pay only for the portion of rent that KCHA did not pay for towards an initial total rent price of $2,211 and required Defendants to "immediately return any excess rent payment to the tenant." Ex. 1 at 2, 9, 14. Because the parties' contract accounts for the overcharging at issue here, Count V fails. After all, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn. 2d at 484.

Even accepting Jammeh's allegations as true and construing them in the light most favorable to her, the Court concludes that Jammeh has not adequately pleaded a plausible claim of unjust enrichment against Defendants.

**3. Sum of money at stake**

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. In weighing this factor, courts consider whether large sums of money are involved, and whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "If the amount of money is large or disproportionate, this factor weighs against default judgment." *Getty Images (US), Inc. v. Virtual Clinics*, No. 13-cv-626-JLR, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014).

Jammeh requests a total judgment of $88,385.13. Mot. at 2. For the reasons laid out above and as discussed in more detail below, most of these damages are authorized by the claims raised in this case. The requested amount includes attorneys' fees. While this amount is not insignificant, the Court finds that the sum of money at stake is "relat[ed] to the seriousness of [Defendants'] conduct" and reasonable for a case that has been litigated for over four years. *PepsiCo*, 238 F. Supp. 2d at 1176.

**4. Possibility of dispute over material facts**

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. Here, this factor favors default judgment because there is no possibility of a dispute over any material fact. The well-pleaded allegations in Jammeh's complaint concerning Defendants' liability were deemed true when default was entered against them. *TeleVideo*, 826 F.2d at 917–18. Jammeh's allegations are also supported by evidence of the underlying lease agreement, *see* Ex. 1, as well as relevant documents from and communications with KCHA about the discrepancy between Defendants' rent charges and Jammeh's portion of the contract rent. *See* Exs. 2–9, ECF No. 46-1

at 35–66. Jammeh's allegations are further supported by evidence of her payments of overcharged rent, which Defendants have not refuted. Mot. at 8; *see also* Ex. 10, Jammeh's Bank Records, ECF No. 46-1 at 67–74; Ex. 11, Proof of Rent Payments and Charges, ECF No. 46-1 at 75–89. Defendants have not refuted any of these allegations or evidence.

### 5. Whether default was due to excusable neglect

The sixth *Eitel* factor addresses whether the entry of default is due to excusable neglect. Here, there is no evidence in the record to support a finding that Defendants' failure to respond is the result of excusable neglect. The record reflects that Defendants were responsive during the Government's investigation of the underlying *qui tam* claim and related settlement negotiations. During those negotiations, Defendants were aware that Jammeh brought additional claims on her own behalf. *See* ECF No. 19, Government's Feb. 28, 2024 Mot. for Extension at 4 ("While only limited issues remain regarding [settlement of] the FCA claim, the United States understands that Relator and Defendants are attempting to resolve other claims Relator raised in her complaint and the issue of attorney's fees for the FCA claim.")

On July 31, 2026, summons was issued to Defendants. ECF No. 36. Jammeh attempted service, to no avail, at all three mailing addresses for Defendants in the record. *See* Summons, ECF No. 36; Affidavit of Mailing, ECF No. 41; Leonard Decl., Ex. 1, ECF No. 39 at 4–10. Plaintiff's counsel emailed Defendant Gesagran Kumar to request waiver of service or a current mailing address. Kumar pointed Plaintiff's counsel to his attorney, who confirmed that he represented Defendants only to settle the FCA claim (Count I) and that he no longer represented them to defend against Jammeh's remaining claims. Leonard Decl., Exs. 2, 3, ECF No. 39 at 11–19. The last time Kumar responded to Plaintiff's counsel was on July 8, 2025, when he indicated that he was out of

the country through the end of the month and implied that he would be seeking counsel to represent him for Plaintiff's remaining claims. Plaintiff's counsel emailed Kumar again on July 30, 2025, and Kumar never responded. *Id.*, Ex. 3 at 16.

On October 31, 2025, Jammeh filed a Motion to Allow Substitute Service by Mail pursuant to CR 4(d) and RCW 4.28.100(2). ECF No. 38. This Court granted the Motion, finding that "Defendant has either departed the state or is concealing himself to avoid service of the Summons and Complaint." ECF No. 40 at 1. Defendants never appeared in this case.

The Court agrees that Defendants are aware of the remaining claims against them. Defendants ceased responding to emails from Plaintiff and her counsel, despite previously being responsive from the same email address. Defendants' non-appearance does not constitute excusable neglect. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (observing that a defendant's conduct is culpable, not excusable, "if he has received actual or constructive notice of the filing of the action and failed to answer").

**6. Policy favoring a decision on the merits**

Finally, the seventh *Eitel* factor requires the Court to weigh whether default judgment is appropriate in light of the general policy favoring decisions on the merits whenever reasonably possible. As noted by Jammeh, the only reason this case cannot proceed on the merits is because Defendants failed to respond and defend against the claims filed against them. Mot. at 9. As such, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment against Defendants. Having found the *Eitel* factors met, the Court now determines the relief that should be given.

**C. Jammeh is entitled to remedies.**

Local Civil Rule (LCR) 55(b)(2) provides that "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). The Court now turns to whether Jammeh's declarations and evidence met the requirements of LCR 55(b).

**a. Breach of Contract and CPA Damages**

Jammeh seeks to recover the $8,534 she overpaid in breach of the Tenancy Addendum to her lease with Defendants. Mot. at 2. Because plaintiffs are entitled to treble damages for CPA violations, Jammeh also seeks a total of $25,000, which is just below the amount she was overcharged, trebled.[7] RCW 19.86.090. The Court finds that Jammeh has sufficiently proved damages for the breach of contract and CPA claims. *See* Exs. 10, 11.

**b. RLTA Damages**

Jammeh seeks $3,317.63 in damages, which is the amount of the withheld security deposit, as well as $7,800 in statutory damages for Defendants' intentional refusal to return it pursuant to RCW 59.18.280. Mot. at 2. But Jammeh has not proven up damages to support her RLTA claim. The record supports that she paid $3,900 as a security deposit, but is devoid of evidence of the partial reimbursement that she alleges she received. For instance, the complaint mentions a letter

[7] The Court notes that treble the overcharged-rent amount is in fact $25,602.

that Defendants sent Jammeh that "gave general descriptions of alleged damage to the Property and other charges deducted from the security deposit[,]" but she has not attached such letter. Compl. ¶ 65. Accordingly, while Jammeh has sufficiently alleged an RLTA claim based on Defendants retaining most of her security deposit, the record does not prove damages for violation of the RLTA.

The Court will provide Jammeh an opportunity to supplement the record in support of RLTA damages. Jammeh shall file, within 14 days of this Order, any letters she received from Defendants about her security deposit, as well as banking records of receiving any portion of the security deposit.

**c. Attorneys' Fees**

The FCA contemplates an award of attorneys' fees in the event of settlement. 31 U.S.C. § 3730(d)(1). Prevailing plaintiffs may also seek fees under the CPA and the RLTA. RCW 19.86.090; RCW 59.18.260; RCW 59.18.280. Here, two sets of counsel for Plaintiff have moved for fees under these statutes. Mot. at 2. Jammeh is a prevailing party in light of the Court's entry of default against Defendants, and the Court finds that the sought-after fees are reasonable.

To determine reasonable fees under fee-shifting statutes, courts use the lodestar method, multiplying the hours counsel reasonably expended by a reasonable hourly market rate. Jammeh supports her fee request with declarations from two sets of counsel, both of which include an exhibit detailing the records of hours worked. Turnham Decl., ECF No. 47; Leonard Decl., ECF No. 48.

Counsel at Leonard Law, PLLC, seeks $15,097.50 in fees. Leonard Decl. ¶ 5. Attorney Sam Leonard expended 30.50 hours on this case at an hourly rate of $495. *Id.* Counsel at the Northwest Justice Project seeks $37,170.00 for the work of three attorneys. Attorney Joshua Turnham expended 17.10 hours at an hourly rate of $475. Turnham Decl. ¶¶ 6, 11. Attorney Niki

Krimmel-Morrison expended 59.40 hours at an hourly rate of $475. *Id.* ¶¶ 7, 11. Attorney David Hession expended 11.20 hours at an hourly rate of $350. *Id.* ¶¶ 8, 11. The Court has reviewed the documentation and finds that the time spent, and hourly rates, are reasonable. The records provided were detailed time entries, and the attorneys' hourly rates are supported by rulings in King County Superior Court and the Washington Court of Appeals. Leonard Decl., Ex. 2; Turnham Decl. ¶ 6. The hours requested did not include time spent by paralegals or other professionals, which could have been reasonably included. *See Missouri v. Jenkins*, 491 U.S. 274, 277 (1989). The detailed records reveal that Jammeh's counsel exercised billing judgment in reducing duplicative and clerical work. The Court finds no need to adjust the lodestar amount. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) ("The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings...that the lodestar amount is unreasonably low or unreasonably high." (citations omitted)).

At present, the Court will only award judgment for $77,267.50, which subtracts the RLTA damages from Jammeh's total requested amount ($88,385.13-($3,317.63+$7,800.00)). If Jammeh files a supplement that adequately proves her RLTA damages, the Court will enter a separate supplemental judgment.

## V. CONCLUSION

For the foregoing reasons:

1. The Clerk is directed to enter judgment against Defendants for $77,267.50.
2. The Clerk is directed to mail a copy of this Order, the Summons, and the Complaint to the following three mailing addresses:

a. 603 S 310th Ct., Federal Way, WA 98003

b. 1516 10th Ct. NW, Auburn, WA 98001

c. 27621 26th Avenue South, Federal Way, WA 98003

3. The Clerk is directed to email a copy of this Order, the Summons, and the Complaint to the following email address: gesagran@gmail.com.

DATED this 5th day of October 2026.

Barbara Jacobs Rothstein
United States District Judge